U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

SEP 29 2008

CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHERIE HONEYCUTT                            PLAINTIFF

vs.                CASE NO. 08-6088

DAVE SLAYMAKER, CHRIS ROBINSON, and
JANET HUGO, in their individual and official capacities
As officials of the Arkansas School for Mathematics
Sciences, and the Arts, the BOARD OF TRUSTEES
OF THE UNIVERSITY OF ARKANSAS            DEFENDANTS

## COMPLAINT

COMES NOW the Plaintiff, by and through counsel, Harrill & Sutter P.L.L.C., and for this Complaint, states:

### PARTIES AND JURISDICTION

1. Cherie Honeycutt (Plaintiff) is a resident of Hot Springs, Garland County, Arkansas, who worked at the Arkansas School for Mathematics, Sciences, and the Arts (ASMSA), in Garland County, Arkansas, which is owned, operated, and controlled by The Board of Trustees of the University of Arkansas ("the Board"), a state agency. Defendants Dave Slaymaker, Chris Robinson, and Janet Hugo were also employed at that school and were supervisors in Plaintiff's chain of command. ASMSA is a school which teaches high school children both in Hot Springs and across both the state and the nation through a distance learning program using the internet and telecommunications systems, and therefore all Defendants' conduct affects interstate commerce. The Board of Trustees of the University of Arkansas has applied for, received, and accepted federal funds in each year from 2003, through the present.

2. This action is brought under the Rehabilitation (Rehab) Act (29 U.S.C. 794), 42 U.S.C. 1983, the Equal Pay Act (EPA), Family Medical Leave Act (FMLA) (29 U.S.C. 2601, et

1

seq.), and the Arkansas Civil Rights Act of 1993 (ACRA) for an amount exceeding that required for diversity jurisdiction.

3. As the events giving rise to this Complaint arose within this Court's district, venue is proper. The court has federal question jurisdiction over the federal law claims, and supplemental jurisdiction over the state law claims as they arise out of the same facts.

## GENERAL ALLEGATIONS OF FACT

4. Plaintiff Cherie Honeycutt is a female who began working at ASMSA as a teacher in the distance learning department in Hot Springs, Garland County, Arkansas in August of 2003.

5. Honeycutt has for years had chronic and permanent mental illnesses, which include: dissociative identity disorder (DID), that is otherwise known as multiple personality disorder, as well as depression and post traumatic stress disorder.

6. These illnesses require periodic visits to a physician and have episodically caused her to be unable to work.

7. At one point the impairment from these illnesses was so severe that Honeycutt was unable to work and she was on social security disability, and accordingly represented a severe impairment of her ability to work, think, handle stress, and concentrate.

8. Although these illnesses continued to be a substantial impairment of Honeycutt's ability to work, think, handle stress, sleep, and concentrate, she became able to work, though she required reasonable accommodation of her disability to do so.

9. In 2004, Honeycutt was harassed by an employee named Ralph. The harassment was sexual and she repeatedly complained to management, but nothing was done. This went on for more than half the year, well after her complaints.

8. In August of 2004, Honeycutt also took on the job of being a residential mentor for students at ASMSA, in addition to her distance learning duties.

9. In 2005, the stress of the harassment Plaintiff's duties as a residential mentor and distance education teacher became too much.

10. Plaintiff had to stop doing the residential mentor job. This was because an excessive amount of stress cause her illnesses to become worse.

10. Plaintiff's supervisors were made aware of her conditions, medical history, and the fact that she had been on SSD in the past, including Dr. John Meazel, Janet Hugo, Dave Slaymaker, and Chris Robins.

11. Plaintiff had a fitness for duty examination that determined that she was fit to do her job in ODE but needed to stop being a residential mentor, so she did.

12. Plaintiff spoke out as a witness in favor of a staff member who had been terminated on account of his military service.

13. The workload of a teacher is determined by three things, including: the number of periods they must teach, the number of different subjects they must prepare to teach, and the number of students they have.

14. Thus, for example, if there were two teachers, both teaching 100 students in 5 periods and one taught only 10th grade English, and the other taught 10th, 11th, and 12th grade English, the latter would have more work to do.

15. Ms. Honeycutt had a heavier workload with more periods and preparations to teach than many other teachers.

16. Honeycutt was a wonderful teacher.

17. Plaintiff was paid less than less qualified males with less onerous jobs.

18. In September 2007, Honeycutt told her supervisor, Dave Slaymaker, that she needed help with the number of classes she had been scheduled to teach.

19. He refused to decrease her workload, and, in fact, increased her workload, even though he was well aware of what kinds of problems excessive stress caused her.

20. In October 2007, Honeycutt unexpectedly needed and took a two week medical leave related to the conditions described above, during which she was hospitalized.

21. Defendants were informed of her need for leave in a manner that was both timely and gave sufficient information to implicate the FMLA.

22. Upon her return from that leave, Defendants disciplined her, making allegations that were false, were exaggerated, one-sided or unfair, or were regarding flaws long accepted in other employees.

23. For instance, they falsely stated that her grading was behind.

24. They also criticized her for being behind the place she was supposed to be in her Spanish classes.

25. However, the department had not set a particular point she was supposed to have reached, the school had signed up late for distance learning, and started the semester and continued for some time without a distance learning lab, without books or workbooks, and without a facilitator.

26. The real motivation was Honeycutt's disability, gender, use of leave, request for a reduced workload, and speech as a witness.

27. They accused her of excessive tardiness, while there were teachers, who were male, who were not disabled, who had not requested accommodation, had not engaged in protected speech, or had not taken FMLA leave; who were late on a regular basis, and were not punished.

28. The next day, Plaintiff showed up slightly after 8:00 and was told she was fired for the reason.

29. However, it was a day she did not have to teach class; and as teachers were salaried and frequently had to work nights or weekends, did not have to punch time clock, and could leave campus when they felt like it, many teachers were regularly arrived after 8:00 a.m on non-teaching days.

30. Defendant Slaymaker told one employee that Plaintiff had been terminated because she was a danger to herself and others and that she had been written up over 40 times.

31. Plaintiff was terminated because of her disability, her gender, her requests for accommodation, her use of FMLA leave, and her speech.

## COUNT I – DISABILITY DISCRIMINATION

32. Plaintiff realleges the foregoing as if fully set out herein.

33. Based on the foregoing, the Board has violated the Rehabilitation Act and the Americans with Disabilities Act by discriminating against Plaintiff based on her disability (actual, regarded as, and record of), failing to accommodate her, and by retaliating against her for seeking accommodation.

34. Based on the forgoing, all Defendants have violated the ACRA by retaliating against her for seeking accommodation.

35. As a direct and proximate cause of all Defendants acts or omissions, Plaintiff has suffered severe mental and emotional distress, lost wages, lost fringe benefits, lost earning capacity, and has incurred medical expenses which would not otherwise have been incurred.

36. The individual Defendants acts have been in malicious, willful, intentional, reckless, and knowing violation of the ACRA, so as to warrant the imposition of punitive damages under that law.

## COUNT II – FMLA

37. Plaintiff realleges the foregoing as if fully set out herein.

38. At all times discussed in 2006 and 2007, Plaintiff had worked for Defendants for more than 1250 hours during the previous year, and had worked for Defendants for more than one year. Accordingly, Plaintiff was an eligible employee within the meaning of the FMLA.

39. At all times, Defendants employed more than fifty people within 75 miles of Plaintiff's worksite during more than twenty weeks of the year, and accordingly, were a covered employer.

5

40. Plaintiff has chronic a serious health condition, requiring periodic visits to a physician or therapist, episodic incapacity, prescription medications, examinations, operations, hospitalization, absences of more than three days, and extending over a long period of time. Accordingly, she had a serious health condition.

41. Defendants had notice of Plaintiff's condition.

42. Defendants have violated the Family Medical Leave Act by failing to give Plaintiff notice of her rights and obligations under the FMLA, by interfering with her use of FMLA leave, by retaliating against her for taking FMLA leave, by not letting him work and denying reinstatement, by disciplining her, and by terminating her.

43. As a direct and proximate cause of Defendant's acts or omissions, Plaintiff has suffered lost wages, lost fringe benefits, lost earning capacity, and has incurred medical expenses which would not otherwise have been incurred.

## COUNT III – GENDER DISCRIMINATION

44. Plaintiff realleges the foregoing as if fully set out herein.

45. Based on the foregoing, the Board has violated Title VII and all Defendants have violated the Equal Pay Act, and the equal protection clause of the U.S. Constitution and accordingly, 42 U.S.C. 1983, by not paying her appropriately, by disciplining her, and by firing her.

46. As a direct and proximate cause of all Defendants acts or omissions, Plaintiff has suffered severe mental and emotional distress, lost wages, lost fringe benefits, lost earning capacity, and has incurred medical expenses which would not otherwise have been incurred.

47. The individual Defendants acts have been in malicious, willful, intentional, reckless, and knowing violation of the unconstitutionality of gender discrimination, so as to warrant the imposition of punitive damages under 42 U.S.C. 1983.

## COUNT IV – FREE SPEECH

48. Plaintiff realleges the foregoing as if fully set out herein.

49. Based on the foregoing, all Defendants have violated 42 U.S.C. 1983 by retaliating against Plaintiff for protected speech regarding the termination of an individual due to his military service in a time of war, by disciplining and terminating her.

50. As a direct and proximate cause of all Defendants acts or omissions, Plaintiff has suffered severe mental and emotional distress, lost wages, lost fringe benefits, lost earning capacity, and has incurred medical expenses which would not otherwise have been incurred.

51. The individual Defendants acts have been in malicious, willful, intentional, reckless, and knowing violation of the unconstitutionality of gender discrimination, so as to warrant the imposition of punitive damages under 42 U.S.C. 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief: back pay, front pay or reinstatement, compensatory damages (Title VII, Rehab Act, ACRA and 1983) punitive damages (ACRA and 1983), liquidated damages under the FMLA and EPA, for a jury trial of all issues so triable, for an injunction requiring Defendant to remove all adverse employment information from his personnel file and for a positive employment recommendation, for a declaratory judgment that Defendant's acts and omissions have violated the aforementioned laws, for an injunction requiring Defendant to comply with the aforementioned laws, for injunctive relief requiring: posting of the aforementioned laws, distribution of handbooks containing such policies, training of all managers on such policies, keeping written all records relating to complaints of interference, retaliation, and discrimination for seven years, disciplinary action for the managers making the termination decision, for a requirement that Defendant's highest HR officer be informed of all allegations of discrimination, retaliation, or violation of the FMLA, establishment of a 1-800 hotline, for keeping a written record of all complaints made through that hotline, for posting of the factual allegations and any resolution of this lawsuit, requirements not to retaliate

against any party or witness in this case, for his reasonable attorney's fees and costs, for a jury trial, and for all other proper relief.

        Respectfully Submitted,

        HARRILL & SUTTER, P.L.L.C.
        Attorneys at Law
        Post Office Box 2012
        310 West Conway Street
        Benton, Arkansas 72015
        (501) 315-1910 FAX (501) 315-1916
        Attorneys for the Plaintiff(s)

By:   /s/ Lucien Gillham
       Lucien Gillham

g:\doc\honeycutt\cplt.doc